## PILGRIM et al. v. GRIFFIN.
### No. 4755.

Court of Civil Appeals of Texas.
El Paso.
Oct. 4, 1950.

Rehearing Denied Oct. 26, 1950.

Ernest Guinn, El Paso, for appellants.

David J. Smith, Alex Silverman, both of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal by Catalina Byrnes Griffin Pilgrim, joined pro forma by her husband, from a judgment of the District Court of El Paso County, Texas, 41st Judicial District.

Edgar Griffin, as plaintiff sued Catalina Griffin Pilgrim to recover an undivided one-half interest in lots 9 and 10, block 119 of East El Pado Addition to the city of El Paso, Texas. The trial was before the court without a jury. Plaintiff recovered an undivided one-half interest in the property, subject to the right of defendant to use and occupy same during her lifetime as a homestead. The judgment further provided that it was without prejudice to the equities which any party may have on partition of this property. The facts in this case are practically without dispute. Defendant Catalina Byrnes married Edgar Griffin, the father of plaintiff, in 1909. The said Edgar Griffin was an employee of the Ingersoll-Rand Company, manufacturers of mining and industrial equipment, with the home office in New York, but at all relevant times herein maintaining an office in El Paso and offices in Mexico City. On the 28th of October, 1921, the property in controversy was deeded to Catalina Griffin, the defendant herein. The consideration recited in the deed was $1000.00 in cash and $5500.00 evidenced by twelve promissory notes, same being a vendor's lien on the property. The notes were signed by Catalina Griffin and her husband Ed Griffin. There was no recital in the deed making same the property of said Catalina Griffin, the defendant here. The deferred payments due on this property have been paid. The source of the funds discharging the deferred obligation does not clearly appear from the evidence. It appears from the evidence that Edgar Griffin spent most of his time in Mexico in connection with his employment with the Ingersoll-Rand Company, but from time to time he visited his wife in El Paso and she perhaps visited him in Mexico.

In January, 1921, Edgar Griffin commenced to live with Guadalupe Guzman as his wife. This relationship was continued from that time until the death of Edgar Griffin in about 1943. On the 7th day of December, 1924, she gave birth to Edgar Griffin, the plaintiff herein. In February, 1928, Eduardo, or Edgar Griffin filed suit in Mexico seeking a divorce from Catalina Griffin. The judgment entered in the case recites that plaintiff therein and defendant were married in the city of Guanajuato, state of Morelas. Citation was by publication and decree was entered granting the plaintiff, Edgar Griffin, a divorce. There was evidence by a lawyer licensed in Mexico that this decree of divorce was in all respects regular and valid under the laws of Mexico.

Thereafter, on the 28th day of April, 1928, Guadalupe Guzman, the mother of plaintiff, and Edgar Griffin, the father of plaintiff, were married by a civil ceremony. In the marriage certificate it was recited that at the time of the marriage the bride stated she was a single woman. Under the law of Mexico and under the law of Texas the plaintiff Edgar Griffin was illegitimate. Under the law of Texas he was not entitled to inherit from his father unless by some subsequent action on the part of his father he was legitimatized. By a trial amendment he plead that he was born out of wedlock in the year 1924 in Mexico City; he was the son of Edgar Griffin and Guadalupe Guzman; that in 1928 Edgar Griffin obtained a divorce from defendant Catalina Griffin in Cuernavaca, Mexico, and married his mother, Guadalupe Guzman, by a civil ceremony in Mexico City and that such marriage was a valid marriage under the laws of the Republic of Mexico and that such marriage legitimatized him as the son of Edgar Griffin and that his father thereafter at all times recognized him as a son and so recognized him in his will. Article 2581 of the Revised Statutes of our State provides as follows:

"Where a man, having by a woman a child or children, shall afterwards intermarry with such woman, such child or children, if recognized by him, shall there-

by be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate."

The inception of the relationship between Guadalupe Guzman and Edgar Griffin was meretricious. There is slight if any evidence that they were living together as husband and wife under an agreement to be such. Besides, it is thought that while the court may not take judicial notice of a specific foreign law, that judicial notice may be taken of the fact that the common law never prevailed in Mexico. It is true that under the testimony of J. E. Foster that at some time Edgar Griffin took J. E. Foster over to his house and he introduced him to a lady as his wife, and a baby or small child as his son. The lady Mr. Foster identified as Guadalupe Guzman. The domicile of Edgar Griffin does not clearly appear from the evidence. From some time in 1909 to his death in 1934 he spent most of his time in Mexico. His marriage with the defendant Catalina Byrnes was celebrated in Mexico. In about 1921 she came to El Paso and the property in controversy was purchased, and from that time on until the date of the divorce in 1928 she spent most of her time in El Paso, but he visited her in El Paso from time to time and she visited him in Mexico. After the divorce he married Guadalupe Guzman in Mexico. It is clear, we think, that at the birth of plaintiff his mother was domiciled in Mexico, that after the marriage of his father and mother in 1928 each of his parents lived in the Republic of Mexico.

■■ This being the case, under the provisions of Article 2581 providing as to legitimation of children "The issue also of marriages deemed null in law shall nevertheless be legitimate" can not, it is thought, legitimatize the plaintiff. Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290.

Up to 1928 Edgar Griffin, the father of plaintiff, was married and incapable of contracting a valid marriage until the time of his divorce in 1928. There is, however, evidence that before the divorce in 1928, Edgar Griffin introduced Guadalupe Guzman as his wife and referred to plaintiff as his son. However, if there was an agreement between them prior to the civil marriage after the divorce there is no express evidence thereof. If such agreement there was it must be inferred from the fact that they were living together as man and wife and some evidence of holding her out as his wife. The other portion of Art. 2581 is as follows: "Where a man, having by a woman a child or children, shall afterward intermarry with such woman, such child or children, if recognized by him, shall thereby be legitimated and made capable of inheriting his estate." Under the portion of the Statute above quoted it requires action by the father of the illegitimate child to legitimatize the child. It is thought that the action so taken effective to that end must be taken by the father. Art. 2581, R.S.; 73 A.L.R. 952 et seq. and In re Lund's Estate, 26 Cal.2d 472, 159 P.2d 643, 162 A.L.R. 626; Restatement Conflict of Laws, Secs. 137 and 139.

If the action be taken by the father there is no reason why the status arising from his action should not give the child a right to inherit from the father in any state or foreign country.

■■ This right however is accorded in foreign states as a matter of comity rather than a legal right. The descent of land is governed by the law of its situs. The act on the part of Edgar Griffin relied upon as legitimatizing his son is his marriage with his son's mother, occurring in Mexico. If the domicile of Edgar Griffin had been in Texas, clearly under Art. 2581 this would legitimize his illegitimate son. The evidence seems clear that subsequent to his marriage Edgar Griffin did recognize his minor son. The evidence tends, however, strongly to show that Edgar Griffin, Sr., at all relevant times herein was domiciled in the Republic of Mexico. He resided there almost continuously from 1909 to 1934, the date of his death. He obtained a divorce in Mexico. He married plaintiff's mother in 1928 in Mexico. On the date of the marriage she unquestionably was domiciled in Mexico. In the divorce decree divorcing plaintiff's father from the defendant it is recited that he was married to her in

the city of Guanajuato in Mexico on the 16th day of October, 1909. It is thought that it might be legitimately inferred by the trial judge from the fact of Edgar Griffin's residence in Mexico that he was there domiciled. As has been stated, plaintiff by trial amendment plead the intermarriage of his mother and father subsequent to the divorce of his father; that by virtue of this marriage under the laws of Mexico he was constituted the legitimate son of Edgar Griffin. There was evidence that subsequent to the divorce and the marriage of plaintiff's father and mother his father recognized him as his son. Restatement, Conflict of Laws, par. 137 and 139.

Lic. Jorge Mena Baca, a person learned in the law of Mexico, testified as to the effect of the marriage of the parents on the legitimacy of their children born out of wedlock prior to their marriage. His testimony was that the marriage of such parents served to legitimatize their offspring born out of wedlock, especially when coupled with acknowledgment by the father of his children—in short, his testimony tended to show that the law of Mexico in regard to the marriage of parents of illegitimate children was in substance the same as that declared by Art. 2581 of our Revised Statutes. Whether the domicile of Edgar Griffin was in the Republic of Mexico or in the State of Texas, his marriage to plaintiff's mother, together with acknowledgment of parentage was sufficient to legitimatize the plaintiff. It is true Mr. Baca's testimony consisted of conclusions. If his conclusions were based on the Mexican Civil Code the testimony was not objected to on the grounds that it was not the best evidence of the Mexican law as to the matters in question. If his testimony be correct and he qualified as an expert on the laws of Mexico, then the laws of Mexico and of the State of Texas are substantially the same as to the effect of the marriage of the parents of an illegitimate child.

 The marriage of plaintiff's parents had the effect of making him a legitimate son. If he became a legitimate son under the laws of Mexico he was legally entitled to inherit his father's interest in the property in question. This was his personal law. If we be mistaken in holding that his father's domicile was in Mexico, then under said Art. 2581 by the marriage of his parents he became legitimate. If the domicile of his parents or his father was not in Texas but in some other state of the United States, then it is thought that the law of his domicile in regard to his legitimatization is presumed to be the same as the law of the forum. The law of the forum was that the marriage would legitimatize the plaintiff. Art. 2581, R.S. of Texas. If ineffective in respect to legitimatization it would confer the right of inheritance of real estate here regardless of the domicile of the father. 162 A.L.R. loc. cit. 628 II.

Under the decree of the court if any part of this property was acquired from separate funds of the defendant, then when the property is partitioned this is to be determined. The plaintiff does not question the right of defendant to occupy the property as her homestead during her natural life.

There is no error in the judgment and it is ordered that same be in all things affirmed.