Jackie Wayne RAULSTON, Appellant,

v.

Sandra Kay RAULSTON, Appellee.

No. 8324.

Court of Civil Appeals of Texas, Texarkana.

Dec. 16, 1975.

Pat Beadle, Beadle & Beadle, Clarksville, for appellant.

Terry Bailey, Carthage, for appellee.

CORNELIUS, Justice.

This is a divorce action. In a trial to the court, judgment was entered decreeing a divorce, dividing the community estate of the parties, and awarding appellee a personal judgment of reimbursement for certain community funds expended. Appellee was appointed Managing Conservator of her minor child, who was born prior to her marriage to appellant. On the basis of the trial court's findings that appellant had voluntarily legitimated the child, appellant was ordered to pay twenty dollars ($20.00) per week child support. Appellant has assigned thirty points of error which will be grouped for discussion.

The first group of points complains of the trial court's action in awarding appellee a personal judgment against appellant for the sum of $1,250.00 as reimbursement for her share of community funds expended during the marriage for the improvement of property in which the trial court found appellant had an "expectancy." The evidence showed that appellant and appellee lived for three and one half years in the house which was owned by appellant's brother, it having been "willed to him by his father." Appellant and appellee paid no rent for their occupancy of the house. There was no allegation or proof that appellant made the expenditures in fraud of the wife. In fact they were made upon the joint consent of appellant and appellee. It was undisputed that appellant had no present title in the dwelling or the land upon which it was situated.

The trial court has broad discretion to make a fair division of the property of the spouses and to adjust their respective equities, including the power to award the wife a personal judgment of reimbursement for community funds expended to enhance the husband's separate property or expended in fraud of the wife. *Smith v. Smith*, 187 S.W.2d 116 (Tex.Civ.App. Fort Worth 1945, no writ); *Pride v. Pride*, 318 S.W.2d 715 (Tex.Civ.App. Dallas 1958, no writ). Since there was no allegation or evidence that these expenditures were fraudulent, the award to appellee must be justified upon the theory that the funds were expended to enhance appellant's separate property. Apparently, the trial court concluded that appellant had a right of inherit-

ance or a possibility of acquiring an interest in his brother's property in the future and awarded reimbursement to appellee on the basis of such "expectancy." It is settled however, that a mere hope of inheritance or possibility of acquiring a title in the future is not such a legal expectancy as will amount to a present right or title in property. *Clark v. Gauntt,* 138 Tex. 558, 161 S.W.2d 270 (Tex.Com.App.1942, opinion adopted); *Dodson v. Kuykendall,* 127 S.W.2d 348 (Tex.Civ.App. El Paso 1939, writ dism'd jdgmt cor.); *Parrish v. Parrish,* 280 S.W. 901 (Tex.Civ.App. Fort Worth 1926, no writ). Consequently, in the absence of any allegation or evidence of fraud, the action of the trial court in awarding appellee reimbursement for expenditures to improve property in which the appellant had no title or legal right was error unless the reimbursement would have been proper as a part of the general division of property and adjustment of equities under the trial court's broad discretionary powers. Considering the modest amount of property here and the other aspects of the court's division, we conclude that the award of such reimbursement, in the absence of legal grounds therefor, was error. Points of error Nos. 1, 2, 3, and 26 are therefore sustained.

■ The next group of points complains of the trial court's judgment that appellant voluntarily legitimated appellee's child. Appellee contends that the court's action in that regard was authorized by the provisions of either Article 42, Tex.Prob.Code Ann. or Sections 13.01 et seq., Tex.Family Code Ann. The trial court found that appellant legitimated the child by affidavit, although it was proven and the court found that appellant *was not* the biological father of the child.

Article 42, Tex.Prob.Code Ann. provides in part as follows:

"Where a man, having by a woman a child or children shall afterwards intermarry with such woman, such child or children shall thereby be legitimated . . . ."

It is clear from the express language of Article 42 and the decisions construing it that such article applies only when the man who marries the mother of the child is the child's natural father. *Pilgrim v. Griffin,* 237 S.W.2d 448 (Tex.Civ.App. El Paso 1950, writ ref'd n. r. e.); *Robinson v. Seales,* 243 S.W. 694 (Tex.Civ.App. Galveston 1922, no writ). Thus, the trial court's finding of legitimation here must stand, if at all, on voluntary legitimation under the provisions of Chapter 13 of Title 2 of the Family Code. Section 13.01 of that title provides for a judicial decree to legitimate an illegitimate child based upon a "statement of paternity" executed by the child's *"father."* Suit for such a decree may be brought by the father, or it may be brought by the mother or State Department of Public Welfare if the statement of paternity has been filed with the Department of Public Welfare. Section 13.02 sets forth certain facts which the statement of paternity must contain. Among those are the fact that the father and mother were not married to each other at the conception of the child or at any subsequent time and that the child is not the legitimate child of another man. Section 13.03 provides that a statement of paternity executed as provided in Section 13.02 is "prima facie evidence" that the child is the child of the person making the affidavit, and that "in the absence of controverting evidence" the statement of paternity is sufficient for the court to enter a decree establishing the signer's paternity of the child. Despite Section 13.02's specific requirements as to the contents of the statement, Section 13.04 provides that a statement of paternity executed prior to January 1, 1974, (as was the one claimed to have been executed here) is valid even though it is not executed as provided in Section 13.02 and even though it is not filed with the court or the State Department of Public Welfare. Even so, it is clear that such an affidavit must contain an acknowledgment of paternity.

Assuming that appellee's pleadings here would qualify as "a suit for a decree establishing the child as the legitimate child of the person executing the statement" as mentioned in Section 13.01(b), we are faced at the outset with the question whether a "statement of paternity" is of itself effective to render a child the legitimate child of the signer of such statement even though it is proven that such signer is not the natural father of the child.

Article 42 of the Probate Code and Chapter 13 of the Family Code were not intended as substitutes for adoption, but rather were intended to enable a father to legitimate his own natural offspring who would otherwise be illegitimate. Article 42 of the Probate Code governs the situation when the natural father subsequently marries the natural mother. But the enactment of that statute left a hiatus when the child's natural father *did not marry the mother* but nevertheless still desired to legitimate his child. Chapter 13 of the Family Code fills this hiatus, in addition to providing remedies for the natural father which were required by recent decisions of the United States Supreme Court,[1] as it provides that when the natural parents do not marry, the father may still legitimate his child by filing the prescribed statement of paternity. But it seems to be the intent of the statutes that natural fatherhood would be the basis of legitimation in either event. This construction is in accordance with the majority rule in the United States, and we think it is confirmed by the wording of the statutes themselves. See Annotation, 33 A.L.R.2d 705, 751; 10 Am.Jur.2d, Bastards, Sec. 49, p. 879; 10 C.J.S. Bastards § 11, p. 56; *Edgar v. Dickens*, 230 Ark. 7, 320 S.W.2d 761 (1959); *In re Flood's Estate*, 217 Cal. 763, 21 P.2d 579 (1933); Tex.Tech.L.Rev., Vol. 5, No. 2, p. 415, *Parent-Child Relationship*. The very term "legitimation" refers to the existence of a blood relation, whereas the term "adoption" properly refers to a legal relation created between persons who are strangers in blood. *Colpitt v. Cheatham*, 267 P.2d 1003 (Sup.Ct. Oklahoma 1954). Another section of the Family Code (12.02) provides that a child is the legitimate child of a man *if the man's paternity is established under the provisions of Chapter 13.* The statement of paternity required in Chapter 13 is not the adjudication of parentage; it is but evidence upon which the court is permitted to make the adjudication. Otherwise, why do the statutes provide that the statement of paternity is *"prima facie evidence"* and that *"in the absence of controverting evidence"* the statement shall be sufficient for the court to enter a decree *establishing the signer's paternity of the child?* If a man not the father of a child may be held to have "legitimated him" by signing a statement of paternity which is proven to be false, the above mentioned provisions of the statutes are rendered meaningless. The only reasonable construction of the statutes which harmonizes all of their parts and gives effect to all of their provisions is that only the natural father may legitimate the child. A statement of paternity is prima facie evidence that the person signing the statement is in fact the natural father, and standing alone it is sufficient for legitimation. In the face of controverting evidence however, it devolves upon the court or trier of fact to determine if such person is the natural father. If he is found to be the natural father, his acknowledgment of paternity has effectively legitimated the child. If he is found not to be the child's father, the case for legitimation fails and adoption is the proper remedy.

In the instant case it was proven and the trial court found that appellant was not the natural father of appellee's child. In the face of those facts it was error for the trial court to conclude that appellant had legitimated the child. Points of error Nos. 7, 8, 13, 14, 16, 17, 18, 19, 23, 24 are therefore sustained.

---

1. See Tex.Tech.L.Rev., Vol. 5, No. 2, p. 418; *Voluntary Legitimation*, and p. 613, Ernest E. Smith, *Illegitimate Children and Their Fathers: Some Problems With Title 2.*

██ Moreover, even if a statement of paternity would have been effective in the context of this case, there is insufficient evidence to support the trial court's finding that appellant executed such a statement. There was no direct proof that appellant executed an acknowledgment of paternity. No affidavit or statement of paternity was introduced in evidence. The testimony showed only that appellant, having been informed by the County Clerk that he and appellee "could change the name on the birth certificate" if they wanted to, appeared before the Clerk, "signed something," paid the Clerk seven dollars ($7.00) and got the birth certificate "changed." The birth certificate was not introduced in evidence. Appellee argues that the birth certificate could only be changed by an affidavit acknowledging paternity, and since appellant admitted that he signed "something" and got the certificate changed the trial court was authorized to assume that he acknowledged paternity. That assumption is not the only valid conclusion to be reached, however, as the statutes provide several instances in which birth certificates may be changed, not all of which involve a legitimation. See Tex.Rev. Civ.Stat.Ann. art. 4477, Rule 47a. Although by indulging in successive inferences and by severely stretching the rule of circumstantial evidence, it might be said that there was some evidence that appellant acknowledged paternity or assumed an obligation to support the child, we find that it is factually insufficient to support the judgment. A matter with such far reaching consequences should not rest upon speculation or such meager circumstances, especially when proof of the true facts can easily be made. If appellant signed an affidavit it would have been, and will be on a new trial, a simple matter to secure it or a certified copy and introduce it into evidence, thus removing all doubts as to its contents and purpose. But appellee insists that since appellant did not deny under oath his execution of the affidavit she pleaded, it was not necessary that she prove its contents. Appellee's petition simply alleged that appellant had "adopted" the child by affidavit. The contents of the affidavit were not set forth in the pleadings nor were they introduced in evidence. Rule 93, Tex.R.Civ.P. provides that on the failure to deny under oath the execution of a written instrument alleged by the pleadings, "the instrument shall be received in evidence as fully proved." That rule only applies to the *execution* of a written instrument, dispensing with the need of proving the authenticity of its execution when not denied under oath. It does not dispense with proof of the *contents* of the instrument. *Thompson v. Republic Acceptance Corporation*, 388 S.W.2d 404 (Tex.1965); *Webb v. Reynolds*, 207 S.W. 914 (Tex.Com.App.1919, opinion adopted). Appellant's points of error Nos. 5 and 11 are therefore sustained.

Appellant's remaining points complain of the trial court's general division of the property and a reimbursement to appellee of $450.00 representing one half of an income tax refund which, after the parties separated, appellant received and expended. We have carefully reviewed the court's findings and the evidence upon which they are based and have concluded that these points are without merit. Points of error Nos. 2, 7, 28, 29 and 30 are therefore overruled as are appellant's other points not otherwise disposed of.

For the errors noted, the judgment of the trial court is reversed and the cause is remanded for a new trial.