Warren DAVIS, A Minor Child, by his Mother and Next Friend, Ora L. LANE

v.

Richard S. SCHWEIKER, Secretary, Department of Health and Human Services.

Civ. A. No. J–81–2557.

United States District Court. D. Maryland.

Dec. 2, 1982.

---

Myrna A. Butkovitz, Baltimore, Md., for plaintiff.

J. Frederick Motz, U.S. Atty., Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

SHIRLEY B. JONES, District Judge.

This action is brought under 42 U.S.C. § 405(g) for review of the final decision of the Secretary of Health and Human Services denying plaintiff, a minor, benefits as a surviving child under 42 U.S.C. § 402(d), based upon his deceased father's Social Security earnings record. The case is before the Court on the parties' cross motions for summary judgment.

On February 19, 1980, Ora L. Lane filed an application on behalf of her minor son, Warren Davis, for surviving child's insurance benefits on the account of the deceased wage earner, Neal Goodwin, Jr. (Tr. 36–39). Benefits were denied initially in a May 8, 1980 special determination that noted the following:

> Warren Davis does not qualify as the son of Neal Goodwin. There is no written acknowledgement by Mr. Goodwin, no court order for paternity or support and no open and notorious acknowledgement by the deceased wage earner. Mr. Goodwin was not supporting Warren Davis when he died.

(Tr. 40). A reconsideration determination of July 29, 1980 also found plaintiff ineligible. (Tr. 44–45). An Administrative Law Judge (hereinafter cited as ALJ), before whom plaintiff appeared, heard the case on January 15, 1981 (Tr. 22–35), and denied benefits in a written decision issued on May 27, 1981. (Tr. 11–15). His determination was affirmed by the Appeals Council on August 5, 1981 (Tr. 2), thus making it the final, reviewable decision of the Secretary. On October 5, 1981, plaintiff filed the current action.

Ms. Lane, plaintiff's mother, testified at the administrative hearing that she had first met Neal Goodwin, the wage earner, in approximately 1958, and that, thereafter, they began "living together as common law husband and wife" in South Carolina. (Tr. 25). She also stated that she was living with the decedent when plaintiff was born on October 11, 1963, and that they all lived together for the following two years. (Tr. 25–26). Ms. Lane described the decedent's reaction to plaintiff's birth as "real happy" (Tr. 26), and stated that the rent, hospital and grocery bills were paid by decedent. (Tr. 28–29). She further testified that decedent had told friends, family and co-workers that plaintiff was his child. (Tr. 31–32). Finally, Ms. Lane stated that decedent's mother had called her two weeks previous "because she wanted to let me know he had passed so I could get, you know, child support for Warren . . . ." (Tr. 32).

Warren Davis also briefly testified at the hearing. He stated that the decedent's mother had recently told him that he was her grandson and asked when he was coming to visit. (Tr. 35).

Because of the nature of the issues raised in this case, a brief review of the statutory scheme providing benefits to the children of deceased individuals is essential. Generally, those children who meet the age, filing, and

non-marriage requirements of the Act, 42 U.S.C. § 402(d)(1), are eligible for benefits if they were dependent upon the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). That plaintiff meets the age, filing and non-marriage requirements is not questioned.

A child is deemed dependent if he or she is (1) living with or supported by the wage earner at the time of his death, or (2) is the legitimate child of the wage earner. 42 U.S.C. § 402(d)(3). If a child is illegitimate, he or she may nonetheless be deemed legitimate for purposes of the Act (and therefore deemed dependent and entitled to benefits) if he or she can show, *inter alia,* that he or she would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death. 42 U.S.C. § 416(h)(2)(A).

Plaintiff contends that the Secretary applied an incorrect legal standard in denying him benefits and that the decision should be reversed as a matter of law. He argues that he is domiciled in Maryland, and, therefore, pursuant to the law of Maryland, he is a legitimate child and thus entitled to benefits under 42 U.S.C. §§ 402(d)(1) and 402(d)(3). Alternatively, plaintiff asserts that he would be entitled to inherit under the whole law of South Carolina, and thus be entitled to benefits under 42 U.S.C. §§ 402(d)(1) and 416(h)(2)(A). Finally, plaintiff contends that the South Carolina intestate succession statute, S.C. Code Ann. § 21–3–30 (Law. Co-op 1976, Cum.Supp. 1981), and the Social Security Act's incorporation of that statute, 42 U.S.C. § 416(h)(2)(A), deny plaintiff the equal protection and due process guaranteed by the United States Constitution.

The ALJ, in concluding that plaintiff was not entitled to child's insurance benefits (Tr. 15), based his findings on the fact that plaintiff "cannot qualify as the 'child' of the deceased wage earner within the meaning of the Social Security Act, unless it is shown that the claimant would be an intestate taker under the law of the state in which the wage earner was domiciled when he died" (Tr. 14), in this case, South Carolina. Although the ALJ noted the argument that plaintiff's "status should be determined under Maryland law, insofar as the claimant is now a resident of Maryland," he found that "South Carolina clearly has the most 'interests' in the wage earner's intestate status." (Tr. 15).

The ALJ further noted that "[u]nder South Carolina law a child born out of wedlock acquires the status of a legitimate child for intestate purposes, only if his parents intermarry or a children's court upon petition of his putative father declares the child legitimate." (Tr. 14). Because neither of these criteria had been met, the ALJ "determined that the claimant cannot qualify as the 'child' of the deceased wage earner under South Carolina intestacy law." (Tr. 14).

The function of this Court on review is not to try plaintiff's claim *de novo,* but rather to leave the findings of fact to the Secretary of Health and Human Services and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *King v. Califano,* 599 F.2d 597 (4th Cir.1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir.1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Teague v. Califano; Johnson v. Califano,* 434 F.Supp. 302 (D.Md.1977). If there is substantial evidence to support the decision of the Secretary, then that decision must be upheld. *Jolley v. Weinberger,* 537 F.2d 1179 (4th Cir.1976); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972).

■ Plaintiff, relying on the Maryland intestate succession statute, Md. Est. & Trusts Code Ann., § 1–208, contends, *inter alia,* that he is a legitimate child under the law of Maryland. Section 1–208 provides in pertinent part:

(b) *Child of his father*—A child born to parents who have not participated in a marriage ceremony with each other shall be considered to be the child of his father only if the father .... (3) Has openly and notoriously recognized the child to be his child; ....

This Court has noted that "Maryland decisions have consistently held that this section, although contained in an inheritance statute, is not limited in scope and application to matters of inheritance only but instead is more in the nature of a general legitimating statute." (citations omitted). *Allen v. Califano*, 452 F.Supp. 205, 212 (D.Md.1978). The section does not require any legal determination as a prerequisite to the application of the statute. *See Thomas v. Solis*, 263 Md. 536, 544, 283 A.2d 777, 781 (1971). Moreover, on several occasions this Court has held that a child meeting any of the requirements of § 1–208 will be considered legitimate within the meaning of 42 U.S.C. § 402(d)(3), and, accordingly, be eligible for benefits. *See Allen v. Califano*, 452 F.Supp. at 212; *Massey v. Weinberger*, 397 F.Supp. 817, 821 (D.Md.1975).

Plaintiff also contends that, due to its choice of law provisions, he would be entitled to inherit under the whole law of South Carolina. He maintains that South Carolina courts would recognize his status as a legitimate child under Maryland law, and would thus entitle him to inherit personal property from the deceased wage earner. Plaintiff therefore asserts that he would be deemed legitimate for the purpose of benefit eligibility.

Thus, this Court faces a difficult choice of law dilemma. If plaintiff's first contention is correct, and Maryland law has already legitimated plaintiff, then 42 U.S.C. § 402(d)(3) would apply and plaintiff would qualify for benefits. If, however, South Carolina law properly applies, this Court must look to 42 U.S.C. § 416(h)(2)(A) and determine whether the whole law of that state would entitle plaintiff to inherit personal property from the deceased wage earner. For the purpose of the case, this Court will assume, *arguendo,* that the whole law of South Carolina must be applied to determine plaintiff's status.

Although both parties agree that South Carolina courts have not considered this particular issue, plaintiff contends nonetheless that those courts would apply Maryland law to determine plaintiff's legitimacy status. He bases this contention on two grounds: (1) South Carolina courts have previously recognized family status accorded by the laws of other states; and (2) the general conflict of law rules mandate application of Maryland law.

This Court has recently had occasion to note that the general conflict of law rules apparently support the analysis proffered by plaintiff. *See Tyler v. Schweiker,* 530 F.Supp. 1028 at 1031, Civil Action (D.Md.1981). The Restatement (Second) Conflict of Laws, § 287, provides:

*Law Governing Legitimacy:*

(1) Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent under the principle stated in § 6 ....

Additionally, comment (g) to § 287 of the Restatement, entitled: *Legitimacy under local law of child's domicil,* explains the rationale:

Since the status of legitimacy is to be preferred over that of illegitimacy, compliance with the requirements of the state of the child's domicil should be enough to legitimate the child unless considerations of fairness to the parent forbid. Such considerations do not exist in a situation where the parent acknowledges the child as his own, and, under the local law of the state of the child's domicil, this acknowledgment legitimates the child with respect to the parent. By his acknowledgment, the parent has recognized the child to be his and has intentionally conferred upon him a certain status.

In another recent case involving facts and issues almost identical to those at bar, Chief Judge Kaufman examined South Carolina case law in an effort to resolve this difficult choice of law question, and noted:

Though, as far as this Court is informed, no South Carolina court has as yet spoken to the choice of law issue presented herein, the Supreme Court of that state has demonstrated a willingness in certain situations to apply the law of other jurisdictions as to matters of family status even when such law has been inconsistent with South Carolina law. In *Zwerling v. Zwerling,* 270 S.C. 685, 244 S.E.2d 311 (1978), the wife sued the husband for divorce in South Carolina. The parties had been married in New York after the wife, a New York resident, had, with the knowledge of her husband-to-be, obtained a bilateral Mexican divorce from her former husband. Contending (244 S.E.2d at 312) that the Mexican divorce and subsequent marriage were binding under New York law and that there was "no South Carolina public policy to prohibit a recognition" of that marriage, the Supreme Court of South Carolina held that the trial court's refusal to afford validity to the marriage was error. *See also Cribbs v. Floyd,* 188 S.C. 443, 199 S.E. 677, 681–82 (1938), in which an adoption pursuant to and valid under North Carolina law was recognized by the Supreme Court of South Carolina in order to permit the adopted child to inherit land in South Carolina from his adoptive father who had died intestate. In view of the principles set forth in the Restatement and the indications obtainable from the opinions of the Supreme Court of South Carolina discussed *supra,* this Court concludes that South Carolina would apply Maryland law herein and permit the plaintiff, Sharon Montgomery, to inherit Williams' personal property if Maryland law would so permit.

*Montgomery v. Schweiker,* 523 F.Supp. 1128, 1134 (D.Md.1981).

Defendant contends that *Montgomery* can be distinguished from the instant case because Sharon Montgomery was born in Maryland while plaintiff was born in South Carolina. This distinction, albeit correct, does not appear to have been a factor in Judge Kaufman's decision in *Montgomery,* and ignores the point discussed *supra* in comment (g) to § 287 of the Restatement. Unless there are countervailing considerations not present in this case, the status of legitimacy, if applicable under the local law of the child's domicile, is to be preferred over that of illegitimacy. The law of Maryland was the personal law of the plaintiff in *Montgomery,* and also of plaintiff here. Accordingly, this Court concludes that South Carolina courts would follow the conflict of law rules and general principles espoused by the Restatement and in South Carolina case law, and would apply Maryland law in order to determine plaintiff's legitimacy *vel non.*

■ Thus, the issue of open and notorious recognition remains unanswered. The ALJ, in his decision, did not make any findings as to whether Neal Goodwin had openly and notoriously recognized plaintiff as his son. Defendant has admitted, however, that "[s]tatements do appear [in the record] . . . reflecting that the wage earner orally acknowledged Warren to be his son (Tr. 57–58, 64, 65)." (Brief in Support of Defendant's Motion for Summary Judgment at 3). Indeed, the record contains an affidavit of Anna Lee Jacobs, a friend of Neal Goodwin's from 1962–1966, which states, "Neal was so happy about his son he told everyone . . . ." (Tr. 57). Another affidavit, from Jeannette Wright, clearly states, "Neal Goodwin said that Warren was his son." (Tr. 65). Moreover, an affidavit of Evelyn Goodwin, Neal Goodwin's mother, contains the following statement:

My son Neal told me he was Warren's father. I was living in Columbia, S.C. during the time Ora Lane and my son were living together and Ora became pregnant. Neal was happy that he was going to be a father. I visited Ora, Neal and Warren while they were all living together. Neal acted like Warren was his son and he told everyone that Warren was his son. When Neal died I tried to find Ora. I wanted to tell her that Neal had died and that Warren might be entitled to social security benefits.

(Tr. 64). These affidavits, viewed in conjunction with testimony at the administrative hearing, provide ample evidence that plaintiff was openly and notoriously recognized by the wage earner.[1]

■ Ordinarily, this Court would remand to give the Secretary an opportunity to correctly view the evidence. *See King v. Califano,* 599 F.2d 597 (4th Cir.1979). The statute governing review in Social Security cases, however, authorizes the courts to reverse the Secretary's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Under this statute, the Fourth Circuit has deemed it "appropriate to reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger,* 493 F.2d 1002, 1012 (4th Cir.1974) (citations omitted). Both circumstances are present in this case.

This Court concludes that plaintiff would be considered legitimate under Maryland law and that South Carolina would recognize Maryland law for the purpose of inheriting personal property from the wage earner. Thus, plaintiff would be considered a child of the deceased wage earner within the meaning of the Act and is entitled to children's insurance benefits under § 402(d)(3).[2]

Accordingly, a separate Order will be entered granting judgment for plaintiff and reversing the decision of the Secretary.

---

[1]. Although this recognition clearly did not occur in Maryland, that fact alone does not vitiate application of Maryland law. As Chief Judge Kaufman noted in *Montgomery:*

> The Secretary has not argued that the open and notorious acknowledgement must take place in Maryland. However, if the Secretary had so argued he could not have prevailed in that regard. *See* Comment g of the Restatement (Second) § 287, quoted *supra. See also In re Lund's Estate,* 26 Cal.2d 472, 159 P.2d 643, 647, 651 et seq. (1945); *Van*

*Horn v. Van Horn,* 107 Iowa 247, 77 N.W. 846, 847–48 (1899); *Record v. Ellis,* 97 Kan. 754, 156 P. 712 (1916). *But cf. Eddie v. Eddie,* 8 N.D. 376, 79 N.W. 856 (1899). 523 F.Supp. at 1134, n. 13.

[2]. Because this Court has ultimately determined that Maryland, and not South Carolina, law applies, it need not consider plaintiff's third claim, concerning the constitutionality of the South Carolina intestate succession statute.