784 F.2d 978
 12 Soc.Sec.Rep.Ser. 334, Unempl.Ins.Rep. CCH 16,726
Patricia MOOREHEAD, Plaintiff-Appellant,
v.
Otis BOWEN, Secretary of Health and Human Services,
* Defendant-Appellee.
Jibri O. Watkins, Real Party in Interest-Appellant.
 No. 85-1627.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1985.
Decided March 12, 1986.
 
 Glenn M. Clark, Withy, Miller, Gerstler & Clark, Berkeley, Cal., for plaintiff-appellant.
 Joseph Stein, Asst. Reg. Atty., U.S. Dept. of Health & Human Serv., San Francisco, Cal., for defendant-appellee.
 Appeal from the United States Court of Appeals for the Northern District of California.
 Before GOODWIN, NELSON and CANBY, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Patricia Moorehead appeals the district court's affirmance of the denial of surviving child's social security benefits on behalf of Jibri Watkins, the minor child of herself and the decedent, Calvin Watkins. The district court had jurisdiction pursuant to 42 U.S.C. Sec. 405(g) (1982), providing for review of final decisions of the Secretary of Health and Human Services. This court has jurisdiction under 28 U.S.C. Sec. 1291 (1982) and 42 U.S.C. Sec. 405(g) (1982), which provides for review of the district court's decision as in other civil cases. We reverse.
 
 I. Background
 
 2
 Patricia Moorehead, the plaintiff-appellant, had a child, Jibri Watkins, by Calvin Watkins while they were living together in California. Moorehead and Calvin never married. Calvin and Moorehead continued to live together after Jibri's birth. The undisputed evidence tended to prove that Calvin described Jibri as his son, provided money for his support, and brought him presents. He subsequently left Moorehead and Jibri. He died domiciled in Texas.
 
 
 3
 Moorehead, who had continued to live in California with Jibri, filed a claim with the Social Security Administration for survivor's benefits for Jibri. An administrative law judge refused her claim on the grounds that Jibri was illegitimate under Texas law. Moorehead exhausted her administrative remedies and timely filed an action in the district court, advancing in both instances her claim that under California law, Jibri could claim benefits as Calvin's child. The district court ruled in favor of the Social Security Administration on cross-motions for summary judgment, holding that the administrative decision was supported by substantial evidence.
 
 
 4
 II. Federal Law.
 
 
 5
 The parties agree that Jibri must satisfy the criteria set out in 42 U.S.C. Sec. 416(h)(2)(A) (1982) to collect benefits. The statute has not changed during the time relevant for this action. It states,
 
 
 6
 In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ... by the courts of the State in which he was domiciled at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.
 
 
 7
 The implementing regulations, 20 C.F.R. Secs. 404.354, 404.355 (1985), are also unchanged during the relevant period, and merely restate in less formal language the provisions of the statute.[1]
 
 
 8
 These provisions make the payability of social security benefits turn on whether a party would be able to claim in intestate succession in a proceeding in the state where the decedent was domiciled. Because Calvin was domiciled in Texas, we must decide whether Jibri would take under the law of intestate succession as applied by the Texas courts. The facts and federal law are undisputed, so the only issue left is whether the Secretary correctly applied the law of Texas. We review questions of law de novo.
 
 III. Texas Law
 
 9
 Texas Probate Code Ann. Sec. 38(a) (Vernon 1980) provides in pertinent part:
 
 
 10
 Where any person, having title to any estate, real, personal or mixed, shall die intestate, leaving no husband or wife, it shall descend and pass in parcenary to his kindred, male and female, in the following course:
 
 
 11
 1. To his children and their descendents.
 
 
 12
 Jibri would inherit under Texas law if he qualified as Calvin's child. Moorehead offers two arguments under Texas law. First, she claims that Texas law allows inheritance by an illegitimate but recognized child. Second, she claims that Texas would follow California law for determining legitimacy.
 
 A. Inheritance by a recognized child
 
 13
 Initially, we agree with the Secretary that only a legitimate child can inherit under Texas law. Section 38(a)(1) defines the intestate descendents to include children, without any reference to legitimacy. Two sections in the Probate Code define "child." Texas Probate Code Ann. Sec. 3 (Vernon 1980) provides:
 
 
 14
 When used in this Code, unless otherwise apparent from the context:
 
 
 15
 ....
 
 
 16
 (b) "Child" includes an adopted child, whether adopted by any existing or former statutory procedure or by acts of estoppel, but, unless expressly so stated herein, does not include an unrecognized, illegitimate child of the father.
 
 
 17
 The phrase "unrecognized, illegitimate child" has led one Texas court to conclude that recognized but illegitimate children could inherit. Johnson v. Mariscal, 620 S.W.2d 905, 908 (Tex.Civ.App.1981), writ refused, n.r.e., 626 S.W.2d 737, 738 (Tex.) (per curiam) (issue whether recognized but illegitimate children not properly presented for review), cert. denied, 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982). Moorehead argues that under Johnson, Calvin's recognition of Jibri allows Jibri to inherit.
 
 
 18
 However, Texas Probate Code Ann. Sec. 42(b) (Vernon 1980) provides:
 
 
 19
 For the purpose of inheritance, a child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother or is legitimated by a court decree as provided by Chapter 13 of the Family Code, or if the father executed a statement of paternity as provided by Section 13.22 of the Family Code, or a like statement properly executed in another jurisdiction, so that he and his issue shall inherit from his father and from his paternal kindred, both descendants, ascendants, and collaterals in all degrees, and they may inherit from him and his issue.
 
 
 20
 Four decisions, including the three most recent, conclude that Sec. 42(b)'s test for legitimacy is intended to apply to the definition of child in Sec. 38(a)(1), and so supersedes Sec. 3(b). In re Estate of Castaneda, 687 S.W.2d 465, 466 (Tex.Civ.App.1985); Mills v. Edwards, 665 S.W.2d 153, 155 (Tex.Civ.App.1983); Batchelor v. Batchelor, 634 S.W.2d 71, 73 (Tex.Civ.App.1982, writ ref'd n.r.e.); Bell v. Hinkle, 607 S.W.2d 936, 937 (Tex.Civ.App.1980, writ ref'd n.r.e.), cert. denied, 454 U.S. 826, 102 S.Ct. 115, 70 L.Ed.2d 100 (1981).
 
 
 21
 The latest decisions, Castaneda, Mills, and Batchelor, expressly reject Johnson. In view of Sec. 42(b)'s greater specificity, the weight of authority, and the express consideration and rejection of Johnson in the most recent decision, we agree with the Secretary that, under Texas law, a recognized but illegitimate child cannot inherit. That brings us to the question whether Texas or California law should govern the issue of legitimacy.
 
 
 22
 B. Choice of law for purposes of inheritance
 
 
 23
 The parties disagree about the appropriate characterization of the issue. Moorehead contends that the issue is legitimacy, and that Texas courts would look to the law of California, as the jurisdiction where the parties resided when the events giving rise to Jibri's claim occurred, to determine legitimacy. The Secretary contends that the sole question is whether Sec. 42(b) is satisfied.
 
 
 24
 Plaintiff relies on Wickware v. Session, 538 S.W.2d 466 (Tex.Civ.App.1976, writ ref'd n.r.e.), which allowed a child to inherit pursuant to a finding of legitimation under California Probate Code Sec. 255 (West Supp.App.1986). Wickware was based on the California court's finding that the children were "duly acknowledged ... i.e. that they had been legitimated pursuant to California law" without further inquiry into the method of acknowledgment. Id. at 469 (emphasis in original). The Texas court allowed the children to inherit under Sec. 38, saying
 
 
 25
 Whether a person must be legitimate in order to inherit an interest in land upon intestacy is determined by the law of the situs.... Whether a person is legitimate is determined by the law of the state with the most significant relationship with that person.... This is usually the state where the child or parent was domiciled at the time of the act creating the status of legitimacy.
 
 
 26
 Wickware v. Session, 538 S.W.2d at 470 (citing Texas cases and the Restatement (Second) of Conflicts of Laws).[2]
 
 
 27
 The Secretary contends that Texas Probate Code Sec. 42(b) provides the sole means for the legitimation of a child in Texas, and that Jibri cannot be Calvin's child because he has not satisfied the provisions of Texas law. The Secretary believes that legitimacy is irrelevant because Texas Probate Code Sec. 42(b) speaks only in terms of specific methods for finding legitimacy, not legitimacy generally. He argues that the Wickware decision rested solely on the prior California judicial determination of legitimacy, which brought the case within the second clause of Sec. 42(b), providing for legitimation through a court decree.
 
 
 28
 This misreads Wickware. As the phrase "legitimated pursuant to California law," quoted above, suggests, Wickware was concerned with the foreign rules for determining legitimacy, not Sec. 42(b). The Wickware court did not merely refer to the judgment; it held that "the law of California determines the status of [the children]." 538 S.W.2d at 470. It relied on the California court decision only to preclude litigation over what those rules meant. Moreover, Wickware does not even cite Sec. 42(b), making the Secretary's argument that Wickware merely applied Sec. 42(b)'s second clause implausible. Finally, reading Wickware as the Secretary suggests would create anomalous results. It would allow Jibri to claim under the Texas law of intestate succession if he first established his legitimacy in a California suit, but not if he brought an action directly in Texas.
 
 
 29
 Because Wickware is indistinguishable, we can uphold the Secretary's contention that Sec. 42(b) provides the exclusive means of legitimating a child only if Wickware misstates Texas law. Our task is not to interpret Sec. 42(b) according to what we might believe to be its plain meaning, but to interpret state law as the courts of that state interpret it. Therefore, we may disregard an interpretation by an intermediate state court, particularly where the state's highest court has refused to review the lower court's decision, only if we are convinced that the highest court of the state would decide otherwise. See Tenneco West, Inc. v. Marathon Oil Co., 756 F.2d 769, 771 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985). As noted above, the Texas Supreme Court refused to review Wickware. With these principles in mind, we turn to the Secretary's argument.
 
 
 30
 The Secretary's argument that Sec. 42(b) is exclusive is not supported by Wickware. Wickware 's authority appears to be unimpaired. Admittedly, the rationale of the Wickware decision could have been more clear. While the Texas statute speaks to methods of making children legitimate for purposes of inheritance, the decision never referred to Sec. 42(b). The decision's rationale could be that Sec. 42(b), despite the reference in its last clause to the rules of other jurisdictions, was intended only to have domestic application. Alternatively, the decision could be based on a determination that the requirement of Sec. 42(b)'s last clause was sufficiently satisfied by the requirements of California Probate Code Sec. 255. In light of the Secretary's hard-pressed contention that the literal language of the statute should control, we have examined past Texas decisions on both grounds. We believe that the result in Wickware is consistent with prior Texas reasoning on either ground, and conclude that the Texas Supreme Court would follow Wickware.
 
 
 31
 We first examine the antecedents in Texas law on the assumption that Wickware adopts the view that a more appropriate jurisdiction's definition of legitimacy should control.
 
 
 32
 A petitioner's jurisdiction's definition of legitimacy has the virtue of certainty. Requiring a petitioner's jurisdiction to conform to the definitions of status of the father's domicile at death would mean that one's status would remain entirely subject to random disposition until one's father had died. Because this uncertainty has not commended itself to the courts, the law of the jurisdiction where the status is claimed to have been created is generally used to determine status, even when status is an issue in connection with the inheritance rules of domestic law.
 
 
 33
 "[T]he status or condition of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicil which creates the status....
 
 
 34
 A person, for instance, who has the status of child of another person in the country of his domicil, has the same status here, and as such takes such share of the father's personal property as the law of the domicil [of the father] gives him...."
 
 
 35
 Martinez v. Gutierrez, 66 S.W.2d 678, 681 (Tex.Com.App.) (quoting Ross v. Ross, 129 Mass. 243 (1880) ), holding approved, 66 S.W.2d 686 (Tex.1933). See also Boudreaux v. Taylor, 353 S.W.2d 901, 903 (Tex.Civ.App.1962) ("legitimacy of the child is determined initially by the law of the place of birth"); Pilgrim v. Griffin, 237 S.W.2d 448, 450 (Tex.Civ.App.1950, writ ref'd n.r.e.) ("there is no reason why the status arising from [the father's legitimation of the child] should not give the child a right to inherit from the father in any state").
 
 
 36
 While the last clause of Sec. 42(b), the one most relevant for present purposes, explicitly incorporates other states' rules, it need not be read as implicitly excluding any other application of foreign law. The concerns of certainty for a child's status argue for a nonrestrictive interpretation. This conclusion is reinforced by the Texas rule that legitimation statutes should be liberally construed. Home of the Holy Infancy v. Kaska, 397 S.W.2d 208, 213 (Tex.1965). See also Jones v. Davis, 616 S.W.2d 276, 278 (Tex.Civ.App.1981), rev'd on other grounds, 626 S.W.2d 303 (Tex.1982).
 
 
 37
 Wickware is also consistent with past Texas cases if it is construed as holding that the requirements of Texas Probate Code Sec. 42(b) were sufficiently satisfied by California procedures under California Probate Code Sec. 255.
 
 
 38
 In Martinez v. Gutierrez, 66 S.W.2d 678 (Tex.Com.App.), holding approved, 66 S.W.2d 686 (Tex.1933), Texas held that a child adopted in Mexico could inherit from a Texas domiciliary, though Mexican law provided for a different procedure for adoption from Texas and prohibited an adopted child from inheriting through intestate succession. The court wrote:
 
 
 39
 It may be thought that the peculiar phraseology of the Texas adoption statute of 1850 indicates a purpose to deny rights of inheritance to any one adopted otherwise than in accordance with the procedure outlined by that statute, as in its first section it authorizes adoption by the execution and filing for record of an instrument in the nature of a deed, and in its second section provides in substance that such instrument so executed and recorded shall entitle the party so adopted to the rights of a legal heir. It is our opinion, however, that the general purposes of the entire statute should be given controlling effect in its interpretation and construction in preference to a technical adherence to its phrases.
 
 
 40
 66 S.W.2d at 682. The court held that the local rules for adoption were not to be applied when the parties lived elsewhere at the time of the adoption. Id. at 682-83.
 
 
 41
 The Texas provision, unlike the parallel California provision at issue in Wickware, requires the execution of a statement. A signed and witnessed writing minimizes the possibility that someone will inadvertently undertake responsibility for a child. It also reduces litigation over legitimacy by making legitimacy depend solely on whether a formal written statement was executed or a court determination of legitimacy was made.
 
 
 42
 However, where multiple jurisdictions are involved, the cautionary and channeling functions of a signed writing are opposed by countervailing factors. Ordinarily, a writing provides a simple and certain means for carrying out one's intent to be responsible for a child. Applying the Texas law requiring a writing in this case, however, would require Calvin to know the varying laws of jurisdictions to which he might move before his death. The uncertainty this engenders means that requiring a writing will frustrate the statutory purpose of simplicity and certainty. Calvin's statements recognizing his need to support the child and his financial support reduce the need for independent evidence of Calvin's willingness to support the child, and Calvin's death, by removing the alternative means of proof, makes it more reasonable to rely on Calvin's oral statements.
 
 
 43
 In light of the need for certainty, the extra formalities required by the Texas mode of acknowledging a child were adequately met by California law. To the extent that the differing formalities required by California and Texas law reflect different attitudes about the desirability of legitimating children, the Texas courts would agree that California has the greatest interest in the transaction because of the presence of both parents and child in California during Jibri's conception, birth and putative legitimation, and the continued residence of the mother and child in California afterwards. See Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex.1984) (adopting most significant contacts test).
 
 IV. Application of California Law
 
 44
 Two California statutes deal with legitimacy. California Civil Code Sec. 7002 (West 1983) describes parent and child relationship in terms that make the marital status of the parents irrelevant, lending some to conclude that the status of illegitimacy is abolished once paternity is shown. See 6 B. Witkin,Summary of California Law, Secs. 242A, 242B, at 326 (Supp.1984). However, Probate Code Sec. 255 (West Supp.App.1986)[3] describes the condition for inheritance. California Probate Code Sec. 255 provides:
 
 
 45
 (a) The rights of succession by a child, as set forth in this division, are dependent upon the existence, prior to the death of the decedent, of a parent and child relationship between such child and the decedent.
 
 
 46
 ....
 
 
 47
 (d) For purposes of this division, a parent and child relationship exists where such relationship is (1) presumed and not rebutted pursuant to, or (2) established pursuant to, Part 7 (commencing with
 
 
 48
 Section 7000) of Division 4 of the Civil Code.
 
 
 49
 Thus, despite the broad language of Sec. 7002, it governs only the parent-child relationship for purposes of support and visitation, see Civil Code Secs. 7010, 7012 (West 1983), not descent. For the same reason that the Texas courts rely on Sec. 38(a), the Texas statute dealing with legitimacy for purposes of inheritance, rather than Sec. 3(b), referring to legitimacy generally, we believe they would apply Probate Code Sec. 255, not Civil Code Sec. 7002.
 
 
 50
 We therefore turn to the requirements of California Probate Code Sec. 255(d)(1). That section requires that a parent and child relationship must be established by law or presumed and not rebutted before the death of the one from whom inheritance is claimed under the appropriate provisions of the Civil Code. A parent and child relationship is presumed to exist under Civil Code Sec. 7004(a)(4) if the father "receives the child into his home and openly holds out the child as his natural child." Because Jibri and Calvin lived together with Jibri's mother and Calvin held out Jibri as his natural son, the parent and child relationship is presumed. No evidence rebutting this presumption exists, and the administrative law judge seems implicitly to have conceded the point in deciding that California law was inapplicable.
 
 
 51
 We conclude that no substantial evidence exists to justify a finding that the relationship was not established before death. Jibri is therefore legitimate for purposes of inheritance under Sec. 255(d)(1). Jibri must therefore be given social security survivors benefits, and the Secretary's decision to the contrary is reversed. Remanding to the Secretary is unnecessary. See 42 U.S.C. Sec. 405(g) (1982).
 
 
 52
 REVERSED.
 
 
 
 *
 Otis Bowen is substituted for his predecessor, Margaret M. Heckler, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 20 C.F.R. Sec. 404.355 provides in pertinent part:
 You may be eligible for benefits as the insured's natural child if one of the following conditions is met:
 (a) You could inherit the insured's personal property as his or her natural child under State inheritance laws as described in Sec. 404.354.
 Section 404.354 provides in pertinent part:
 (b) Use of State laws..... If the insured is deceased, we look to the laws that were in effect at the time the insured worker died in the State where the insured had his or her permanent home.... The State laws we use are the ones the courts would use to decide whether you could inherit a child's share of the insured's personal property if he or she were to die without leaving a will.
 
 
 [2]
 The language of Sec. 42(b) at the time of the Wickware decision read, "Where a man, having by a woman a child shall afterwards intermarry with such woman, such child shall thereby be legitimate, and made capable of inheriting his estate." See Texas Prob.Code Ann. Sec. 42(b), Historical Note (Vernon 1980). Construing the statute's current version more restrictively than its former version contradicts both the liberalizing nature of the amendment and the Texas rule that statutes allowing for legitimacy are to be liberally construed. See Home of the Holy Infancy v. Kaska, 397 S.W.2d 208, 213 (Tex.1965). See also Jones v. Davis, 616 S.W.2d 276, 278 (Tex.Civ.App.1981), rev'd on other grounds, 626 S.W.2d 303 (Tex.1982). The Secretary does not argue to the contrary
 
 
 [3]
 Section 255 was repealed, but it remains effective for the estates of those dying before January 1, 1985. See Probate Code Sec. 6414(a) (West Supp.1986). The old law governs because Calvin died in 1982. See Owens ex rel. Owens v. Schweiker, 692 F.2d 80, 82-83 (9th Cir.1982). See also Adens ex rel. Green v. Schweiker, 773 F.2d 545, 547 (3rd Cir.1985) (distinguishing Owens as involving an enactment effective regardless of date of death)