Karen MACK, on Behalf of Litrease WESLEY, minor child, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. 92–4105–R.

United States District Court, D. Kansas.

Jan. 29, 1993.

Kenneth M. Carpenter, Carpenter, Chartered, Topeka, KS, for plaintiff.

D. Brad Bailey, Office of U.S. Atty., Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is an action to review a final decision by the Secretary of Health and Human Services denying Litrease Wesley, a minor, benefits as a surviving child under 42 U.S.C. § 402(d) based upon her deceased father's Social Security earnings record. This matter is before the court upon plaintiff's motion for summary judgment and defendant's motion for an order affirming the Secretary's decision.

On April 30, 1990, plaintiff Karen Mack (Karen) filed an application on behalf of her minor daughter, Litrease, for surviving child's insurance on the account of the deceased wage earner, Mark P. Wesley. The claim was denied initially and upon reconsideration by the Social Security Administration (SSA). At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on February 13, 1991. Plaintiff was out of town and was unable to appear at the hearing. Plaintiff's attorney appeared and waived her appearance. During the hearing, the ALJ heard oral argument from plaintiff's counsel. On March 5, 1991, the ALJ determined that Litrease was not a child of Mark P. Wesley. The Appeals Council of the SSA granted plaintiff's request for review in part but ultimately adopted the ALJ's finding that

Litrease was not the child of Mark P. Wesley. Thus, the decision of the ALJ stands as the final decision of the Secretary.

■ The court's review in this case is narrow. This court's determination is limited to whether the findings of the Secretary are supported by substantial evidence. *Talley v. Sullivan*, 908 F.2d 585, 586 (10th Cir.1990). In reaching this determination, we are not allowed to weigh the evidence or substitute our discretion for that of the Secretary. *Id.* "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the Secretary." *Pacheco v. Sullivan*, 931 F.2d 695, 697 (10th Cir. 1991). Evidence is not substantial "if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion." *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985).

The record reveals that "Litrease Yvonne Mack" was born on October 24, 1978. A hospital birth certificate shows Karen as the mother. No father is listed on the hospital birth certificate. Subsequently, on June 22, 1979, Michael Angelo Brown swore in an affidavit before a judge in Shawnee County, Kansas that he was the father of Litrease Yvonne Wesley. On the same date, Karen swore that she was the mother of Litrease and that Mr. Brown was Litrease's natural father. The birth certificate issued by the Division of Vital Statistics of the Kansas Department of Health and Environment shows Michael Angelo Brown as the father and Karen as the mother. This birth certificate is signed by Michael and Karen Brown under a verification which provides as follows: "I certify that the personal information provided on this certificate is correct to the best of my knowledge and belief."

Michael and Karen Brown were divorced in April 1981. The journal entry of divorce states that "one child was born to said union, to wit: Litrease Brown, 2 years of age." Karen was awarded custody of the child, and Michael Brown was awarded visitation and ordered to pay child support.

Mark P. Wesley applied for social security disability in 1981 and 1983. On both

applications, he stated that he had no children. Mark Wesley died on February 26, 1985 in Michigan. He had resided there prior to his death. The record contains correspondence between Litrease and Mark Wesley prior to his death. The correspondence includes letters and greeting cards dated between August 1984 and February 1985. One of the letters, dated August 19, 1984, reads as follows:

Hi Daddy's Angel,

How is my very smart and real cute little girl has been doing lately there? By all means with the very best of luck I hope just fine for you there at home and all about.

This is your one and only true daddy writing you this letter in order to say I miss you and love you very much. I can imagine the fact that you can't hardly wait any longer towards having to see and talk to me.

In the meantime I am sending you a couple of my drawings for you to keep in order to remember me by them always. I hope you will enjoy the two of them very much.

I has been such a long time since I held you in my arms and laid eyes upon you while imagining in my mind as being daddy's little cute baby girl. I can't wait to see you in person. Hopefully it will be real soon.

In the meantime daddy will be able to talk to you over the telephone or write to you as often as I can here. So! I am *closing out this letter for good now until* we write and talk to each other. In the meantime daddy loves you very much.

Your Daddy,

Mark

Another letter, dated February 10, 1985, contains the following:

Dear Litrease,

Daddy is just dropping you a few lines in the mail to let you know that he hasn't forgotten you at all. But still thinking about you always while being up here at home. I really and truly miss you and love you very much.

I hope you will enjoy your Valentine's Day card, ten dollars, and that one picture especially for you.

Guess what! So happens you forgot daddy's birthday which was the 23rd of last month. But that is okay because you can get something for daddy birthday next year. *smile.*

Before closing out this letter, I would like to say hello to all three of you and my God bless and be with you always.

Yours Truly,

Daddy Mark

The record contains affidavits from Mark Wesley's grandmother and mother, and from Karen's mother and father, all of which recite their belief that Mark Wesley was the natural father of Litrease. A school record from the 1986–87 school year shows Litrease's last name as "Brown" with "Wesley" noted parenthetically. Subsequent records show that Litrease was enrolled as Litrease Wesley.

In the application for benefits, Karen explained that Michael Brown insisted on being named as the father on Litrease's birth certificate at the time Karen and Mr. Brown were married. In a subsequent affidavit, Karen restated her explanation and acknowledged the "untruthfulness" of the statements sworn before the state court by her and Mr. Brown. She indicates that her prior statements were an "error in judgment."

Under the Social Security Act, every child of an individual who dies fully or currently insured under the Act is entitled to child's insurance benefits if the child has applied for such benefits, is unmarried, under the age of 18, and was dependent upon the insured individual at the time of the insured's death. 42 U.S.C. § 402(d)(1). Here, Litrease meets the age, filing and nonmarriage requirements of the Act.

A child is deemed dependent if he or she was (1) living with or supported by the wage earner at the time of his or her death, or (2) is the legitimate child of the wage earner. 42 U.S.C. § 402(d)(3). If a child is illegitimate, he or she may nonetheless be deemed legitimate for the purposes of the Act and hence deemed dependent and enti-

tled to benefits if he or she can establish, *inter alia*, (1) that he or she would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death, 42 U.S.C. § 416(h)(2)(A); or (2) that the deceased wage earner had acknowledged the child in writing as his or her son or daughter, 42 U.S.C. § 416(h)(3)(C)(i)(I).

The ALJ concluded that Litrease was not the child of Mark Wesley under the provisions of the Act. In reaching this conclusion, he made the following findings:

> The record shows that Karen was never married to the wage earner; that the wage earner never acknowledged in writing that the claimant was his child; that the wage earner has never been judicially decreed to be the claimant's father; that the claimant did not live with the wage earner at the time of the wage earner's death; and that the wage earner did not provide support to the claimant.

The ALJ specifically found that Litrease would not be eligible to claim Mr. Wesley's property under the intestacy laws of Michigan because the evidence did not demonstrate that Litrease was the biological child of Mr. Wesley. Accordingly, the ALJ determined that Litrease was not the child of Mark Wesley under 42 U.S.C. §§ 416(h)(2)(A), 416(h)(2)(B) or 416(h)(3)(C).

Plaintiff raises two arguments in this case. First, she contends that the ALJ erred in not finding that Litrease was the child of Mark Wesley under the acknowledgement provisions of 42 U.S.C. § 416(h)(3)(C)(i)(I). She points to the correspondence between Litrease and Mark Wesley in which Mr. Wesley indicated that Litrease was his daughter. Second, she argues that the ALJ erred in applying Michigan law to determine whether Litrease would be deemed a child of Mark Litrease under 42 U.S.C. § 416(h)(2)(A). She contends that Kansas law should have been applied, and that it would have established Litrease as the child of Mark Wesley by virtue of his acknowledgement of pater-

nity of Litrease. She points to Kansas case law and K.S.A. 38–1114(a)(4) in support of this position.

■ The court shall initially consider the plaintiff's second argument which concerns the application of Michigan or Kansas intestacy laws. The ALJ applied the law of Michigan because Mark Wesley was domiciled there at the time of his death. Plaintiff does not dispute that Mark Wesley was domiciled in Michigan at the time of his death. Plaintiff also does not dispute that Michigan law would preclude Litrease from inheriting Mark Wesley's property. Plaintiff contends that the application of Michigan law in this case "creates great harm, and the use of Kansas law brings about the humane, remedial and beneficial situation which the Social Security Act is supposed to promote." Plaintiff relies upon *Moorehead v. Bowen*, 784 F.2d 978 (9th Cir.1986) and *Davis by Lane v. Schweiker*, 553 F.Supp. 158 (D.Md.1982) for support of her position that Kansas law should be applied here.

The Act requires that the court use the law of the state of domicile of the insured wage earner at the time of his death in order to determine a claimant's eligibility for benefits under § 416(h)(2)(A). In the two cases cited by plaintiff, the courts did use the law of a state different from the one in which the wage earner was domiciled at the time of his death to determine the legitimacy of the claimant. However, in both instances, the courts considered whether the state in which the wage earner was domiciled at the time of death would apply the law of another state to determine this issue. In *Davis by Lane*, Judge Jones of the District of Maryland determined that South Carolina, the domicile of the wage earner at the time of his death, would apply Maryland law to determine the child's legitimacy. In reaching this conclusion, the court carefully considered a Maryland decision which had reviewed prior decisions of the South Carolina Supreme Court. 553 F.Supp. at 161–62. In *Moorehead*, the Ninth Circuit reached a similar conclusion. The court determined that Texas, the domicile of the wage earner at

the time of his death, would apply California law to determine the claimant's legitimacy. 784 F.2d at 981–83. Again, the Ninth Circuit examined a number of Texas decisions in order to reach this conclusion. *Id.*

For the purpose of this opinion, the court shall assume that the courts in *Moorehead* and *Davis by Lane* reached the correct conclusions concerning the choice of laws issue. We do not find, however, that they require the result suggested by plaintiff. In relying upon these cases, plaintiff has failed to recognize the analysis adopted by those courts. Plaintiff has not engaged in any discussion of Michigan law concerning its application of the laws of other states for the purpose of determining legitimacy. Rather, plaintiff has simply argued that Kansas law should be applied because it is more beneficial to the plaintiff than the law of Michigan. Plaintiff has failed to provide the court with any argument or support for the contention that Michigan would apply Kansas law on legitimacy under these circumstances. Plaintiff also failed to make any such argument to the ALJ or the Appeals Council.

We are not certain whether plaintiff simply overlooked the analysis employed by the courts in *Moorehead* and *Davis by Lane* or discovered that Michigan law did not support her position. We note that in *In re Blanco Estate,* 117 Mich.App. 281, 323 N.W.2d 671, 676 (1982), the Michigan Court of Appeals held that Michigan would follow the minority rule on the choice of laws issue. The court noted that the minority rule provides that the law of the situs of the property included in the probate estate controls the question of whether a child is legitimate. *Id.* In reaching its decision, the court made the following comments:

> We are inclined to believe Michigan will be better served by following the minority rule, i.e., letting the law of the situs of the property included in the probate estate control the question of whether a child is legitimate. Since passage of such property on death depends upon a Michigan Probate Court, we believe it would be more fitting to look to Michigan

law to decide the status of whether a child is legitimate or illegitimate. All persons within the state will be treated equally whether they have just entered the state from a state with drastically different concepts of legitimacy or have resided in this state all of their lives.

> If Michigan lawmakers consider it wise to follow the law of Puerto Rico and to obliterate all distinctions between legitimate and illegitimate children, there is no reason Michigan cannot do so. But, the point is the decision should be Michigan's and not that of some other state.

*Id.* 323 N.W.2d at 676–77.

The *Blanco* decision requires the ALJ and this court to apply Michigan law to the question raised by the plaintiff even under the authority of *Moorehead* and *Davis by Lane.* We find no support for the "equitable argument" made by the plaintiff concerning the harmful nature of Michigan law and the benevolence of Kansas law. The court must apply the law as set forth by Congress in 42 U.S.C. § 416(h)(2)(A) in determining the issues at hand.

With the finding that Michigan law must be applied to any determination of a claim under § 416(h)(2)(A), we find that the ALJ's decision is supported by substantial evidence. As acknowledged by the plaintiff, the law of Michigan would not recognize the legitimacy of Litrease.

■ We next turn to the plaintiff's arguments concerning the application of 42 U.S.C. § 416(h)(3)(C)(i)(I). This section provides that a wage earner's son or daughter who does not fall within the definition of "child," may be deemed to be a "child" if the wage earner "had acknowledged in writing that the applicant is his or her son or daughter" before his or her death. 42 U.S.C. § 416(h)(3)(C)(i)(I). If a written acknowledgement of paternity exists, the claimant is statutorily presumed eligible for benefits. *Jones v. Sullivan,* 953 F.2d 1291, 1294 (11th Cir.1992).

■ The statute does not specify what is necessary for a writing to constitute a written acknowledgement. The courts have generally interpreted a written acknowl-

edgement to mean that the wage earner must by his own hand acknowledge paternity. *Jones,* 953 F.2d at 1294; *Cox v. Schweiker,* 684 F.2d 310, 316–17 (5th Cir. 1982). This has meant that letters, tax returns, and public documents have been found to constitute written acknowledgement of paternity. *See, e.g., Jones,* 953 F.2d at 1294 (tax return); *Patterson v. Bowen,* 839 F.2d 221, 223 (4th Cir.1988) (public document); *Vance v. Heckler,* 757 F.2d 1324, 1327–28 (D.C.Cir.1985) (letter); *Brown for Brown v. Bowen,* 668 F.Supp. 146, 149 (E.D.N.Y.1987) (public document). The acknowledgement must consist of a clear and unequivocal statement that the writer is the parent of the child. *Jones,* 953 F.2d at 1294 (putative father's signed tax return which listed child as dependent was sufficient); *Parker for Lamon v. Sullivan,* 891 F.2d 185, 190 (7th Cir.1989) (statement in public aid report that putative father agreed to pay support for claimant after graduating from college was insufficient); *Garcia by Garcia v. Sullivan,* 874 F.2d 1006, 1008 (5th Cir.1989) (birth certificate of illegitimate child completed by midwife named deceased wage earner as father was insufficient); *Chester for Chester v. Secretary,* 808 F.2d 473, 475 (6th Cir. 1987) (putative father's letter to his parents stating "tell Margaret I will send money for the baby when I get a job" was insufficient); *Vance,* 757 F.2d at 1327–28 (putative father's letter referring to mother of claimant and indicating that "I told her that I would take care of my son" was sufficient); *Cox v. Schweiker,* 684 F.2d at 317 (references in diary by putative father to claimant as "pretty" kid and designation of claimant as beneficiary of a life insurance policy was insufficient); *Johnson v. Sullivan,* 735 F.Supp. 416, 421 (M.D.Fla. 1990) (letter to claimant's mother reflecting intimate relationship with mother and affectionate attitude toward claimant was insufficient). Extrinsic evidence may be used to clarify the ambiguity of a written document. *Vance,* 757 F.2d at 1327 n. 7; *Johnson,* 735 F.Supp. at 421–22 n. 5.

In light of the aforementioned discussion, we are puzzled by the ALJ's conclusion that "the wage earner never acknowl-edged in writing that the claimant was his child." The decision by the ALJ fails to contain any mention of these letters. The decision does refer to some valentine and birthday cards that are a part of the record, but no reference is made to these letters. The court finds it necessary to remand this case to the Secretary for an evaluation of these letters for the purpose of applying 42 U.S.C. § 416(h)(3)(C)(i)(I).

██ Prior to remand, the court wants to address one issue that may arise concerning § 416(h)(3)(C)(i)(I). The circuits are divided on whether proof of a biological relationship between the claimant and the wage earner must be established prior to demonstrating a written acknowledgement of paternity within the meaning of § 416(h)(3)(C)(i)(I). The Tenth Circuit has not addressed this issue. The Eighth Circuit has required an initial showing of paternity prior to allowing a claimant to proceed under § 416. *Luke for Luke v. Bowen,* 868 F.2d 974, 978 (8th Cir.1989). The Fourth Circuit, however, has held that satisfying the requirements of § 416 is itself proof of paternity and that no other proof of a biological relationship is necessary. *Patterson v. Bowen,* 839 F.2d 221, 224 (4th Cir.1988).

After carefully reviewing both cases, we are of the opinion that no proof of a biological relationship is necessary for the application of § 416(h)(3)(C)(i)(I). Any other construction of this statute would render the provisions of the Act internally inconsistent and redundant. *See Patterson,* 839 F.2d at 224; *Luke for Luke,* 868 F.2d at 980–83 (Heaney, C.J., dissenting).

IT IS THEREFORE ORDERED that this case be remanded to the Secretary for further proceedings consistent with this memorandum and order.

IT IS SO ORDERED.