Kimberly LOW DOG, for Meaghan LeBeau and Morghan LeBeau, minor children, Plaintiff, and concerning Daniel K. LeBeau (deceased),

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. CIV 01–3012.

United States District Court, D. South Dakota, Central Division.

April 5, 2002.

Cheryl Schrempp Dupris, Assistant United States Attorney, Pierre, for Plaintiff.

Elizabeth W. Holmes, Dakota Plains Legal Service, Eagle Butte, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

Plaintiffs brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiffs' claim. This matter was referred to United States Magistrate Judge Mark A. Moreno for the purposes of conducting any necessary hearing and issuing a report and recommendation.

The magistrate filed his Report and Recommendations on February 1, 2002. Copies of such Report and Recommendations were served upon the parties as required by 28 U.S.C. § 636. The Commissioner filed objections. No objections having been made to the magistrate's factual determinations, the clear implication is that the Commissioner agrees with the magistrate's proposed findings of fact. 28 U.S.C. § 636(b)(1)(C) provides, in part that a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The Commissioner objects only to the magistrate's conclusions of law.

The issue before the Commissioner was whether Meaghan and Morghan LeBeau ("claimants") qualified for child's insurance benefits under 202(d)(1) of the Social Secu-

rity Act, 42 U.S.C. § 402(d)(1). Claimants contend that they are the posthumously born illegitimate children of Daniel K. Le-Beau ("wage earner"), who died two days before their birth. Illegitimate children can prove their status as a "child" of a deceased wage earner through one of two methods relevant here. The first method, set forth in 42 U.S.C. § 416(h)(2)(A), provides, in relevant part:

> In determining whether an applicant is the child of a fully or currently insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property ... if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death ... Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

The second method, set forth in 42 U.S.C. § 416(h)(3)(C)(i), provides that illegitimate children may establish their status as a "child" of a deceased wage earner if the wage earner:

> (I) had acknowledged in writing that the applicant is his ... daughter,
>
> (II) had been decreed by a court to be the ... father of the applicant, or
>
> (III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter, and such acknowledgment, court decree, or court order was made before the death of such insured individual....

The Commissioner determined that the claimants cannot be deemed to be the children of wage earner under either of the foregoing methods and under several other methods which are not the subject of this appeal.

The magistrate, relying upon the second method set forth above, recommended that this court find that certain letters written to the applicants' mother, Kimberly Low Dog ("Kimberly"), by wager earner before his death constitute written acknowledgment. The magistrate concluded that the Commissioner's own Programs Operation Manual allowed for the statutory requirement to be met if "clear and convincing evidence shows that the [wage earner] acknowledged the child in writing." The magistrate concluded that, considering the undisputed other evidence that wage earner had acknowledged paternity, the letters met the latter standard, that legitimacy was therefore presumed, and that, under the Manual, the Commissioner bears the burden of rebutting that presumption. The Commissioner objects to the conclusion that the burden shifted to the Commissioner.

Discussion of the burden of proof presumes there is proof on both sides of the issue. There was absolutely no credible evidence before the Commissioner to dispute claimants' claims to be wager earner's children, save a statement from the wage earner's widow contending that she herself feels there is a "possibility" that the applicants are not the wage earner's children. The evidence in favor of a finding of paternity includes:

> Wage earner was living with Kimberly from January to April 1995. Wage earner had been separated, but not divorced, from his wife for approximately two years.
>
> The estimated date of conception was March 22, 1995.
>
> Kimberly stated that no other man could have caused her pregnancy because she had sexual relations only with wage earner during the relevant time period. Wage earner and Kimberly were seen frequently together as a couple during

the time they were cohabitating and wage earner had been seen coming out of Kimberly's bedroom.

Wage earner acknowledged to Kimberly's brother that he intended to divorce his wife and have children with Kimberly.

Wage earner acknowledged orally to third parties during Kimberly's pregnancy that he was the father of the children she was carrying.

Wage earner stated his intention to third parties to support the children.

Wage earner told his father that he was the father of the children Kimberly was carrying.

Kimberly testified that wage earner moved to New York because he could make more money to support her and the children.

In a letter to Kimberly, wage earner indicated that he could not provide the " support" he had previously mentioned because a job didn't materialize.

In a subsequent letter to Kimberly, wage earner stated that he expected to have some income in the next few weeks, acknowledged her pregnancy, and thanked her for her efforts on behalf of those two "significantly special spirits."

Wage earner's widow stated that wage earner told her the "he was with" Kimberly and that the children "might be his." As a judge with an extensive case load involving Native American defendants and witnesses, it is clear that the reference to being "with" Kimberly referred to an intimate relationship. Wage earner's widow even acknowledged that wage earner had admitted to an intimate relationship with Kimberly. Wage earner told his father that he intended to return to South Dakota to have blood tests performed to prove to his wife that the twins Kimberly was carrying were his children.

Wage earner died November 22, 1995. The claimants were born November 24, 1995. Information was submitted during the appeals process that the Cheyenne River Sioux Tribal Court had issued a decree of paternity on September 30, 1999, finding that wage earner was the claimants' father. Also submitted were South Dakota Birth Certificates issued October 7, 1999, naming wage earner as the claimants' father. New and material evidence submitted to the Appeals Council becomes part of the administrative record, even though the evidence was not originally included in the ALJ's record, and this court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir.1992).

Neither the Social Security Act, nor the regulations under it, prescribe a standard of proof. "But we have no doubt that preponderance of the evidence is the proper standard, as it is the default standard in civil and administrative proceedings." *Jones for Jones v. Chater,* 101 F.3d 509, 512 (7th Cir.1996) (citing *Steadman v. SEC,* 450 U.S. 91, 101 n. 21, 101 S.Ct. 999, 1007 n. 21, 67 L.Ed.2d 69 (1981), and *Director v. Greenwich Collieries,* 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221(1994)). *Accord, Young v. Apfel,* 198 F.3d 260 (10th Cir.1999).

Judicial review of the Commissioner's decision that claimants have failed to establish (by a preponderance of the evidence) that they are the children of wage earner is limited to determining whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "In the review of an administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from

its weight.' Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." *Burress v. Apfel,* 141 F.3d 875, 878 (8th Cir. 1998).

■ The magistrate reviewed the second method relevant here for determining whether claimants could be considered the wager earner's children under the Social Security Act. Specifically, the issue was whether wage earner had acknowledged in writing that the applicants were his daughters, pursuant to 42 U.S.C. § 416(h)(3)(C)(i)(I). As set forth in the magistrate's decision, the Commissioner's own operations manual provides that the "writing does not have to be in any special form" and allows that a wage earner "can effectively acknowledge a child who has been conceived but not yet born." In the case of unborn children, it would be impossible to identify them by name. The Commissioner determined that Kimberly and wage earner's father's testimony was sincere. They both testified to writings wherein wage earner had acknowledged that he was the claimants' father, and had acknowledged a desire to support Kimberly while she was pregnant with the claimants. Wage earner's letters need not be considered in a vacuum. In light of all the other unrefuted evidence in the record, the letters constitute, by a preponderance of the evidence, that wage earner acknowledged paternity in writing. Substantial evidence detracts from the Commissioner's decision to the contrary so that it is not supported by substantial evidence on the record as a whole.

■ The court now turns its attention to those issues that the magistrate did not, based upon his recommendation concerning the written acknowledgment, reach. Claimants could establish their status as children of wage earner if a court had so decreed. 42 U.S.C. § 416(h)(3)(C)(i)(II).

The statute does not require that such finding of paternity occur before the death of the wage earner. The Commissioner's regulations provide that, "[i]f the insured is deceased, the . . . court degree . . . must have been made or issued before his . . . death." 20 C.F.R. § 404.355(a)(3). Such regulations are inconsistent with the statute, which, in the very next sentence, requires the court order to contribute to the support of the applicant to be made before the death of the wage earner. 42 U.S.C. § 416(h)(3)(C)(i)(III). It would have been a simple matter to include that restriction in part II of the test for determining the status of an illegitimate child of a deceased wage earner. Congress' failure to do so implies that a prior determination is not required in part II of that test. A determination of paternity had been made prior to the Commissioner's final decision. The Commissioner's decision that claimants failed that test is not supported by substantial evidence on the record as whole.

Another test, set forth in 42 U.S.C. § 416(h)(3)(C)(ii), provides that illegitimate children may establish their status as a "child" of a deceased wage earner if the wage earner "is shown by evidence satisfactory to the Commissioner of Social Security to have been the mother or father of the applicant, and such insured individual was . . . contributing to the support of the applicant at the time such insured individual died." Of course wage earner could not have contributed to the support of the claimants at the time he died since they were not yet born. There is substantial evidence, however, that he had every intent to support the claimants, or at least to support their mother, but was unable to do so due to his lack of employment. The ALJ discounts any intent to support since wage earner failed to do so despite the apparent resources to return to South Dakota prior to his death for a Sun Dance.

There was no evidence in the record that wage earner paid for that trip.

Finally, and perhaps most importantly, there is no substantial evidence in the record as a whole to support the Commissioner's decision that the claimants failed to meet the test set forth in 42 U.S.C. § 416(h)(2)(A), which provides that the claimants can establish their status as children of wage earner if the laws of intestacy in the State in which he was domiciled at the time of his death would have accorded claimants that status. The Commissioner determined that wage earner was domiciled in New York at the time of his death. The relevant New York intestacy statute provides:

> A non-marital child is the legitimate child of his father so that he and his issue inherit from his father and his paternal kindred if:
>
> (A) *a court of competent jurisdiction has*, during the lifetime of the father, *made an order of filiation declaring paternity* or the mother and father of the child have executed an acknowledgment of paternity pursuant to section four thousand one hundred thirty-five-b of the public health law, which has been filed with the registrar of the district in which the birth certificate has been filed or;
>
> (B) the father of the child has signed an instrument acknowledging paternity, provided that
>
> > (i) such instrument is acknowledged or executed or proved in the form required to entitle a deed to be recorded in the presence of one or more witnesses and acknowledged by such witness or witnesses, in either case, before a notary public or other officer authorized to take proof of deeds and
> >
> > (ii) such instrument is filed within sixty days from the making thereof with the putative father registry established by the state department of so-

> cial services pursuant to section three hundred seventy-two-c of the social services law, as added by chapter six hundred sixty-five of the laws of nineteen hundred seventy-six and
>
> > (iii) the department of social services shall, within seven days of the filing of the instrument, send written notice by registered mail to the mother and other legal guardian of such child, notifying them that an acknowledgment of paternity instrument acknowledged or executed by such father has been duly filed or;
>
> (C) *paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own;* or
>
> (D) a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by clear and convincing evidence.

NY EST POW & TRST § 4–1.2 (emphasis supplied).

Clearly, a court of competent jurisdiction has entered an order declaring paternity. Although New York law requires that such order be made during the lifetime of the father, the Commissioner's own regulations provide that the Commissioner "will not apply any State inheritance law requirement that an action to establish paternity ... must have been started or completed before the worker's death." 20 C.F.R. § 404.355(b)(2). The Commissioner's decision on this matter is not supported by substantial evidence on the record as a whole. It is also not in compliance with her own regulations. Admittedly, the ALJ did not have the paternity decree before him. However, that decree was provided prior to a final decision by the Appeals Council.

Finally, there is no question here that paternity has been established by clear and convincing evidence and that wage earner openly and notoriously acknowledged the claimants as his children. There simply is no evidence to the contrary, other than an unsworn letter from wage earner's widow stating that there is a "possibility" that wage earner is not the father. The widow, however, would have no idea as to the answer to the question. The courts of New York hold that an order of paternity, together with sworn testimony of a child's mother of exclusive access by the decedent, can be considered as evidence of paternity under part (C) of § 4–1.2. *Grivas v. Port Auth. of New York and New Jersey,* 227 A.D.2d 105, 106, 641 N.Y.S.2d 646, 647 (1995).

The court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. Accordingly,

IT IS ORDERED:

1) The Report and Recommendations of the U.S. Magistrate Judge (Doc. 20) is accepted and adopted, as supplemented herein.

2) The motion of the plaintiff (Doc. 11) for judgment on the pleadings is denied as no such relief is granted in connection with a social security appeal.

3) The objections of the defendant (Doc. 21) to the magistrate's Report and Recommendations are overruled.

4) The final administrative decision to the effect that the claimants are not eligible for children's insurance benefits under the Social Security Act is reversed.

5) This matter is remanded to the Commissioner for an award of benefits plus interest.

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

## REPORT AND RECOMMENDATIONS FOR DISPOSITION

MORENO, United States Magistrate Judge.

### I.

[¶ 1] The above-captioned social security case was referred to this Court by the District Court[1] pursuant to 28 U.S.C. § 636(b) for the purpose of conducting any necessary hearings[2] and submitting to it proposed findings of fact and recommendations for disposition of the case.

[¶ 2] After careful scrutiny of the record and based on the totality of the circumstances present, the Court does now make and propose the following findings of fact, report and recommendations for disposition.

### II.

[¶ 3] Kimberly Low Dog, on behalf of her twin children, Meaghan and Morghan LeBeau (referred to individually as Mother, Meaghan and Morghan, or collectively as Low Dogs), applied for child's insurance benefits under the Social Security Act (the Act), 42 U.S.C. §§ 402(d) and 416(e), on February 1, 1996. The Social Security Administration (SSA) denied the Low Dogs' application initially and upon reconsideration. They then requested and were given an evidentiary hearing before an Administrative Law Judge (ALJ), who later concluded that Meaghan and Morghan were not eligible for such benefits. The Appeals Council declined to review the ALJ's determination, making it the final decision of the Social Security Commissioner (Commissioner).

[¶ 4] The Low Dogs thereafter sought judicial review of the Commissioner's decision,

2. No hearings were held because none were needed to decide the case.

filing a complaint on May 11, 2001 pursuant to 42 U.S.C. § 405(g). The Commissioner answered the complaint and the Low Dogs moved for judgment on the pleadings. Both parties thereafter filed memoranda detailing their respective arguments.

## III.

[¶ 5] The general issue presented is whether Meaghan and Morghan are entitled to child's insurance benefits under 42 U.S.C. § 402(d)(1), (3). This question turns on whether the girls are the "children" of Daniel K. LeBeau, (Wage Earner), within the meaning of § 416(h)(3)(C)(i)(I).

[¶ 6] For the reasons more fully explained below, the Court finds and concludes that Meaghan and Morghan are Wage Earner's "children" for purposes of the Act and should receive child's insurance benefits.

## IV.

[¶ 7] In 1994, Wage Earner moved from New York to South Dakota. Wage Earner was born and raised in South Dakota, where his parents still resided. At the time of the move, Wage Earner was married to, but separated from, his wife, Christine LeBeau (Wife).

[¶ 8] Mother and Wage Earner first met in October, 1994 and lived together for approximately three months, beginning in January, 1995. In early April, 1995, Wage Earner ended his intimate relationship with Mother because test results disclosed that tumors in his brain had returned. Wage Earner then moved to his mother's home in or near Eagle Butte, South Dakota and resided there for a month or two.

[¶ 9] Mother allegedly informed Wage Earner that she might be pregnant some time in April, 1995. Mother confirmed her pregnancy on May 10, 1995, with March 22, 1995 being estimated as the date of conception. Mother testified that she did not have sexual intercourse with any man other than Wage Earner at or around the time of conception.

[¶ 10]On May 2, 1995, Wife, who traveled from New York to South Dakota, confronted Mother at the latter's place of employment about Mother and Wage Earner's relationship. A short time later, in July, 1995, Wage Earner moved, with Wife accompanying him, back to New York. On July 12, 1995, Mother, after an ultrasound was done on her, discovered that she was carrying twins. Wage Earner learned of this fact some time after he had reestablished his residency in New York.

[¶ 11]During the first week of August, 1995, Wage Earner and Wife attended a sun dance in South Dakota. Later that same month, they both returned to New York.

[¶ 12]After taking up residence again in New York, Wage Earner wrote at least two letters to Mother. In his September 15, 1995 letter, Wage Earner stated that he could not provide the " support" he had previously talked to Mother about. In a letter dated October 10, 1995, Wage Earner noted that he was aware of the fact that Mother was carrying "two ... special spirits", presumably referring to Meaghan and Morghan, and thanked Mother for her "effort in their behalf". On November 22, 1995, Wage Earner died as a result of injuries he sustained in a motor vehicle accident that occurred near Brandt, New York. He remained a New York resident up to and at the time of his death.

[¶ 13]Two days later, on November 24, 1995, Mother gave birth to Meaghan and Morghan. The birth certificates issued for the twins on January 26, 1996, did not list a father.

[¶ 14]Gilbert LeBeau, Wage Earner's father, testified that Wage Earner and Mother lived together from January, 1995 to April, 1995. He also testified that Wage

Earner had informed him that Mother was pregnant with Wage Earner's children. In his testimony, LeBeau further stated that he had seen Meaghan and Morghan and that they strongly resembled his own children when they were the twins' age. He likewise testified that he had given Mother money so that she could purchase diapers, food and other necessities for the girls.

[¶ 15]Not surprisingly, Wife disputes Mother's claim that Wage Earner is Meaghan and Morghan's father. In her March 19, 1996 statement, Wife contended that Mother has a reputation for "being with several men" and that as such "[t]here's a possibility that the babies may not be his [Wage Earner's]".

[¶ 16]Following an evidentiary hearing held on September 30, 1999 in tribal court, Wage Earner was declared to be the natural father of Meaghan and Morghan. In making its paternity determination, the tribal court found that Wage Earner had sent letters to LeBeau acknowledging that he was the father of the unborn children Mother was carrying and that Wage Earner wanted the children to have his name.

### V.

[¶ 17]A court's "role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000); *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir.2000). The "substantial evidence on the record as a whole" standard is not synonymous with the less rigorous "substantial evidence" standard:

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative deci-

sion, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary.

*Burress v. Apfel,* 141 F.3d 875, 878 (8th Cir.1998) (citations omitted). The court, though, "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently." *McKinney,* 228 F.3d at 863; *see also, Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000); *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993).

### VI.

[¶ 18]The criteria for entitlement to child's insurance benefits are found in § 402(d). This statute provides that every "child" of an insured deceased wage earner is entitled to child's insurance benefits (survivor benefits) if the child has applied for such benefits, is married, under the age of eighteen and was dependent upon wage earner at the time of the wage earner's death.

[¶ 19]The Act creates a series of dependency presumptions. A child is deemed dependent if she was living with or supported by the wage earner at the time of the wage earner's death, or is the legitimate child of the wage earner. § 402(d)(3). If the child is illegitimate, she may nonetheless be deemed legitimate for purposes of the Act (and hence considered dependent and entitled to benefits) if she can establish that the wage earner, prior to his death, acknowledged in writing that the child was his daughter. § 416(h)(3)(C)(i)(I); *see also, Luke for Luke v. Bowen,* 868 F.2d 974, 977–80 (8th Cir.1989); *Vance v. Heckler,* 757 F.2d 1324, 1325–28 (D.C.Cir.1985); *Mack on Behalf of Wesley v. Sullivan,* 813 F.Supp. 760, 764–65 (D.Kan.1993).

[¶ 20]The statute requires that a claimant provide proof of a biological relationship, i.e., that the child is the offspring of the wage earner. *Luke for Luke,* 868 F.2d at 978. The claimant invoking one of the alternative means of establishing entitlement under § 416(h)(3)(C) must prove, as an ultimate fact, that the wage earner was the child's natural parent. *Id.* at 979 (*citing McMillian by McMillian v. Heckler,* 759 F.2d 1147, 1153 (4th Cir.1985)).

[¶ 21]The ALJ found that, based on the evidence of record, Meaghan and Morghan could not be deemed the children of Wage Earner under § 416(h)(3)(C)(i)(I) because he did not acknowledge in writing that the twins were his daughters. The Low Dogs then supplemented the record with a dispositional order, containing the tribal court's findings, but the Appeals Council refused to overturn the ALJ's decision, opining that the additional information submitted was "consistent with the evidence already of record in [the] case."

## VII.

[¶ 22]The ALJ and Appeals Council's findings are clearly erroneous and not supported by evidence that a reasonable mind would accept as being adequate to support the conclusion they reached. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also, Jacko for Alexander v. Bowen,* No. LR–C–88–173, 1988 WL 242395 at *4–6 (E.D.Ark. 1988). In particular, their findings, on the written acknowledgment of paternity issue, were overwhelmed by substantial and undisputed evidence to the contrary. *Jones v. Sullivan,* 953 F.2d 1291, 1294–96 (11th Cir.1992); *Vance,* 757 F.2d at 1326–28.

[¶ 23]Admittedly, the September 15, 1995 and October 10, 1995 letters Wage Earner wrote to Mother were not sufficiently specific, in and of themselves, to constitute an acknowledgment of paternity. These letters, however, when coupled with LeBeau's testimony in tribal court and the findings made therefrom, are more than enough to satisfy § 416(h)(3)(C)(i)(I)'s written acknowledgment requirement.

[¶ 24]After hearing and considering the testimony of LeBeau, the tribal court expressly found that prior to his death, Wage Earner wrote LeBeau letters wherein Wage Earner acknowledged his parentage of the children Mother was pregnant with.

[¶ 25]Under the SSA's own operations manual, written acknowledgment of paternity need not be made by any one particular document or be in any special form. SSA POMS § GN 00306.105A.1.,4.[3] If such an acknowledgment no longer exists or cannot be obtained, the statutory requirements are met if "clear and convincing evidence shows that the [wage earner] acknowledged the child in writing." POMS § GN 00306.105A.4. The wage earner can effectively make his acknowledgment after conception occurs but before a child is born. POMS § GN 00306.105A.2. In determining what constitutes written acknowledgment for purposes of the statute, state law definitions and judicial precedents are not controlling. POMS § GN 00306.105A.5.

[¶ 26]These internal policies are consistent with the Commissioner's own codified rules and the prior rulings of the SSA. *See* 20 C.F.R. § 404.355(a)(3); Social Security Ruling 79–22, 1979 WL 15536 at *3 ("[N]either the Act nor the Regulations ... requires that the acknowledgment be executed in any special way. Any statement written by the wage earner, or at his direction, which acknowledges ... the claimant as the wage earner's ... daugh-

---

**3.** The Programs Operations Manual, or "POMS", is a handbook for internal use by employees of the SSA. *See Schweiker v. Han-* sen, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

ter is sufficient acknowledgment in writing to satisfy the statutory requirement."); Social Security Ruling 72–32, 1972 WL 12320 at *2 ("[W]hen a claimant for child's insurance benefits is the ... daughter of an insured worker, and there is clear and convincing evidence that the worker timely acknowledged the child in writing ... the statutory requirement for an acknowledgment in writing may be satisfied ...."). Together, they all require a claimant to prove that the wage earner acknowledged his parentage in writing before death.[4] If the claimant shows this to be the case, paternity and thus legitimacy are presumed, unless the Commissioner is able to rebut the same with competent evidence.

[¶ 27]Here, Meaghan and Morghan came forward with proof that Wage Earner, in letters he wrote to LeBeau and Mother, acknowledged that he was the twins' biological father. The Commissioner was unable to rebut this presumption or show that LeBeau's testimony, regarding the acknowledgment letters he received from Wage Earner, was suspect or otherwise unworthy of belief.[5]

[¶ 28]Given LeBeau's testimony in tribal court, the Court is puzzled by the ALJ's findings that "the evidence of record does not demonstrate that the [Wage Earner] ever acknowledged in writing that [Mother] was pregnant with his ... children" and that "[Wage Earner] did not acknowledge in writing that the claimant[s] [were] his daughter[s]". *Jones,* 953 F.2d at 1294–96; *Mack On Behalf of Wesley,* 813 F.Supp. at 765. These findings, which the Appeals Council upheld on a supplemented record, ignore, or at the very least, gloss over, the letters LeBeau received from Wage Earner acknowledging that he was the father of Mother's two unborn children. *Id.*[6]

[¶ 29]The desire to preserve and protect the social security trust fund from spurious claims should not be used to deny children's survivor benefits unless there is proof that a biological relationship is lacking. A searching review of the record clearly shows that the Commissioner cannot conclusively prove that Wage Earner is not the natural father of Meaghan and Morghan so as to overcome the statutory presumption of legitimacy found in § 416(h)(3)(C)(i)(I).[7] This being the case, and in light of the requirement that courts must liberally construe the Act in favor of

4. The "written acknowledgment requirement has been interpreted by the [Commissioner] in a fashion that gives claimants the utmost favor." *Garcia on Behalf of Garcia v. Sullivan,* 874 F.2d 1006, 1007 (5th Cir.1989).

5. Such a showing would be difficult, if not impossible to make in the face of the ALJ's finding that LeBeau's testimony "was sincere and forthright."

6. In view of the tribal court's findings that Wage Earner acknowledged his parentage in writing and its conclusion that there was clear and convincing evidence of paternity, the Court has little difficulty, on this record, in concluding that the "clear and convincing evidence" standard referred to in POMS § GN 00306.105A.4. has been met.

7. Unlike the record evidence of non-paternity considered in *Luke for Luke,* the evidence es-

tablishing paternity in the instant case is substantial as well as reliable and easily trumps the largely self-serving evidence that was offered to disprove or at least call into question Wage Earner's parentage. Wife's confrontation with Mother at the latter's workplace on May 2, 1995 speaks volumes and taints the probity of Wife's non-testimonial statements. The Low Dogs presented overwhelming evidence that Wage Earner was Meaghan and Morghan's natural father and he acknowledged this in letters he himself wrote. Meaghan and Morghan are therefore presumed to be the legitimate and dependent children of Wage Earner and the evidence to the contrary (which comes primarily from Wife) falls well short of dispelling this presumption and vitiating the twins' entitlement to child's insurance benefits. *Jones,* 953 F.2d at 1294–96.

awarding survivor benefits to children, *see Luke for Luke*, 868 F.2d at 984 (Heaney, J., dissenting), the Court believes that Meaghan and Morghan are entitled to receive child's insurance benefits on the earnings record of Wage Earner.

[¶ 30]Having reached this conclusion, the Court finds it unnecessary to address or otherwise provide a recommendation on the Low Dogs' other claims and expresses no opinion as to the propriety of the same.[8]

### VIII.

[¶ 31]Based on the foregoing findings, conclusions and analysis and in light of the record as a whole, the Court hereby

[¶ 32]RECOMMENDS that the Low Dogs' Motion for Judgment on the Pleadings (Docket No. 11), filed pursuant to § 405(g), be GRANTED and that judgment be entered awarding Meaghan and Morghan child's insurance benefits retroactively, commencing in February, 1996, and prospectively.

[¶ 33]Dated this 1st day of February 2002 at Pierre, South Dakota.

### NOTICE

Failure to file written objections to the within and foregoing Report and Recommendation for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. *See* 28 U.S.C. § 636(b)(1).

Feb. 1, 2002.

---

**8.** Because the evidence of record, including and especially that which was offered in and found to be fact by the tribal court, plainly establishes that Wage Earner acknowledged his paternity of Meaghan and Morghan in writing, the Court also does not believe that there is a need to remand this case to the Commissioner for an evaluation of the evidence or for a determination as to whether § 416(h)(3)(C)(i)(I) has been complied with.